# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# COLUMBIA DIVISION

| | |
|---|---|
| WILLIAM JOSEPH DENTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:18-cv-00001 |
| v. ) | Judge Crenshaw / Frensley |
| ) | |
| NANCY BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 14. Plaintiff has filed an accompanying Memorandum. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 16.

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED and that the decision of the Commissioner be REMANDED.

# I. INTRODUCTION

Plaintiff filed his application for Disability Insurance Benefits ("DIB") on June 25, 2014,[1] alleging that he had been disabled since March 8, 2011, due to major depression, major anxiety disorder, panic disorder, and insomnia. *See, e.g.,* Docket No. 12, Attachment ("TR"), 167-68, 187. Plaintiff later amended his alleged onset date of disability to June 23, 2013. TR 182. Plaintiff's application was denied both initially (TR 56) and upon reconsideration (TR 69). Plaintiff subsequently requested (TR 102-103) and received (TR 29) a hearing. Plaintiff's hearing was conducted on September 1, 2016, by Administrative Law Judge ("ALJ") J. Dennis Reap. *Id*. Plaintiff and vocational expert ("VE"), James B. Adams, appeared and testified. *Id*.

On January 17, 2017, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-28. Specifically, the ALJ made the following findings of fact:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

    2.    The claimant has not engaged in substantial gainful activity since June 23, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq.*).

    3.    The claimant has the following severe impairments: thoracolumbar spine degenerative disc disease; status post right forearm surgeries; major depressive disorder; and posttraumatic stress disorder (20 CFR 404.1520(c)).

    4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] Plaintiff protectively filed his application on March 26, 2014. TR 56, 69.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can occasionally use his right upper extremity to handle objects; can understand, remember, and carry out simple and detailed tasks and instructions but not complex or executive tasks and instructions; can focus, attend to, and concentrate on the above tasks for a normal work day and work week without unusual distraction or need for special supervision or considerations; can establish and maintain appropriate relationships while having occasional interaction with peers and supervisors; can do so without exhibiting substantial behavioral difficulties; can sustain occasional interaction with the general public on a superficial basis; can adapt to routine, not frequent or intense workplace stress and changes; can travel independently; can avoid normal hazards; and can set and carry out realistic goals.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on January 30, 1981, and therefore, he was 32 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in

> the Social Security Act, from June 23, 2013, through the
> date of this decision (20 CFR 404.1520(g)).

TR 14-22.

On May 1, 2015, Plaintiff timely filed a request for review of the hearing decision. TR 94. On November 6, 2017, the Appeals Council issued a letter declining to review the case (TR 1-6), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept

as adequate to support the conclusion." *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389 (6th Cir. 1999), *citing Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.,* 105 F.3d 244, 245 (6th Cir. 1996), *citing Consol. Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389, *citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985), *citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnoses and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not

only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process summarized as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments or its equivalent.[2] If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a prima facie case of disability.
>
> (5) The burden then shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

*See, e.g.* 20 CFR §§ 404.1520, 416.920. *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th

---

[2] The Listing of Impairments is found at 20 CFR § 404, Subpt. P, App. 1.

Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. *Moon*, 923 F.2d at 1181; 20 CFR § 404, Subpt. P, App. 2, Rule 200.00(e)(1), (2). *See also Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 281-82 (6th Cir. 1985). Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's prima facie case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments: mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ: (1) failed to properly consider the opinion of Plaintiff's treating physician; and (2) failed to properly consider the effect of Plaintiff's medically determinable impairments, including generalized anxiety disorder ("GAD"), panic disorder, bipolar disorder, and attention deficit hyperactivity disorder ("ADHD"). Docket No. 15.

7

Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed, or in the alternative, remanded. *Id*.

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Opinion of Plaintiff's Treating Psychologist**

Plaintiff argues that the ALJ erred by assigning little weight to a treating source opinion from Dr. Poe, Plaintiff's treating psychologist. Docket No. 15. Plaintiff also contends that the ALJ failed to properly evaluate Dr. Poe's opinion, did not provide sufficient rationale for rejecting the opinion, and failed to consider the required factors for evaluating opinion evidence. *Id.* at 9. Specifically, Plaintiff argues that the treatment records the ALJ cited as being inconsistent with Dr. Poe's opinion are from office visits pertaining to abdominal pain, left hand

8

issues, and dental issues, and that "most of these citations by the ALJ do not even involve visits for mental health treatment." *Id.* at 9-10.

Plaintiff additionally argues that, in finding that Dr. Poe's opinion was inconsistent with the record, the ALJ "cherry-picked the evidence which he thought supported his decision and . . . did not properly evaluate Dr. Poe's opinion based on the actual evidence of record." Docket No. 15 at 11. Plaintiff contends that the ALJ failed to consider portions of Plaintiff's mental health treatment records from January 2013 through June of 2016 that support Dr. Poe's opinion. *Id.* at 10-11. Plaintiff points to the following information as support for his argument that the ALJ took positive notations from the record out of context rather than evaluating Plaintiff's mental health issues in the context of the record as a whole:

> The Plaintiff was admitted in January of 2013 due to depression and suicidal ideations. He was diagnosed with bipolar II disorder. A urine drug screen was negative for alcohol or drugs. R. 256. Records from Dr. Poe from July of 2013 noted the following: persistent anxiety; worry; feels sad most of the time; history of panic attacks; decreased appetite; frequent awakenings; sad and crying off and on; and depressed mood and affect. R. 323-326. Records from Dr. Poe from February of 2014 noted a temper problem with rage. R. 316. Records from Dr. Poe from March of 2014 noted episodes of losing his temper and difficulty sleeping. R. 315. Records from Dr. Poe from May of 2014 noted problems with worry and occasional panic attacks in the middle of the night. R. 313. Records from Dr. Poe from August of 2014 noted that the Plaintiff had not slept in 4-5 days and gets easily upset. R. 310. Records from Dr. Poe from October of 2014 noted that Plaintiff looked anxious and sad. R. 306. In April of 2015 Dr. Poe noted that the Plaintiff had persistent worry about dying; increased worry and anxiety; and increased depression and sadness. R. 302 and 338. In April of 2015 Dr. Poe completed a Mental Disorder Questionnaire Form. R. 296-300. He noted that the Plaintiff is socially and emotionally isolative; has emotional and psychological issues that impair his ability to control his negative emotions; suffers from impaired concentration and focus; is unable to

9

> function in a normal work environment; has impaired ability to
> follow instructions; struggles with emotional lability, withdrawal,
> and mood swings; and has a poor prognosis. R. 296-300. Records
> from Dr. Poe from July of 2015 noted that the Plaintiff was upset
> and angry and also noted an increase in panic attacks and
> nervousness. R. 334. Records from Dr. Poe from September of
> 2015 noted that the Plaintiff was depressed. R. 332. Records from
> Dr. Poe from November of 2015 noted that the Plaintiff has a fear
> of dying; mood swings; and racing thoughts. R. 329. Records from
> June of 2016 note intrusive thoughts; avoidance; and
> hypervigilance. R. 482.

Docket No. 15 at 10-11, *citing* TR 256, 323-326, 315, 313, 310, 306, 302, 338, 296-300, 334, 332, 329, 482.

Plaintiff also asserts that the ALJ erred by instead giving significant weight to the opinions of the non-examining state agency consultants. *Id.* at 11. Plaintiff notes that the ALJ's basis for giving significant weight to the consultants' opinions was that they were generally consistent with the report of consultative examiner, Dr. Palmer, dated September 1, 2016. *Id.* Plaintiff notes that because the ALJ assigned little weight to Dr. Palmer's report, the ALJ's reasoning is "contradictory and insufficient," and "amounted to an internal inconsistency in the decision." *Id.* at 12.

Defendant responds that the ALJ properly considered the opinion of Dr. Poe. Docket No. 16. Defendant argues that the ALJ correctly gave Dr. Poe's opinion little weight because "it was inconsistent with the record as a whole, including the treatment records and the opinions from the State agency physicians." *Id.* at 6. Specifically, Defendant argues that the ALJ pointed out inconsistencies between Dr. Poe's opinion and Plaintiff's medical records, including "improvement with medications and treatment" and several instances in which Plaintiff "showed normal mood and affect." *Id.* at 9. Therefore, Defendant contends, the ALJ properly found that

the "rather grave restrictions" in Dr. Poe's opinion were not supported by the medical records. *Id.* at 10.

Defendant additionally maintains that the ALJ properly accorded greater weight to the state agency non-examining doctors. *Id.* at 11. Defendant notes that although "Dr. Poe's records are difficult to read," the state agency doctors reviewed and summarized them before concluding that Plaintiff could perform simple jobs. *Id.* Defendant argues that the state agency non-examining consultants' opinions are consistent with the consultative examination in September 2016, and can be given great weight because they are supported by the record as a whole. *Id.*

The ALJ has a duty to "fully and fairly develop the administrative record." *Johnson v. Secretary*, 794 F.2d 1106, 1111 (6th Cir. 1986). In doing so, the ALJ must identify the reasons and basis for crediting or rejecting certain items of evidence (*see, e.g., Morehead Marine Services v. Washnock*, 135 F.3d 366, 375 (6th Cir. 1998); *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985), as there can be no meaningful judicial review without an adequate explanation of the factual and legal basis for the ALJ's decision (*Hyatt Corp. v. N.L.R.B.*, 939 F.2d 361, 367 (1991)).

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (c)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more

11

weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion. . . .

(3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .

(4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

(5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

. . .

20 CFR § 416.927(c) (emphasis added). *See also* 20 CFR § 404.1527(c).

The ALJ must articulate the reasons underlying his decision to give a medical opinion a specific amount of weight.[3] *See, e.g.,* 20 CFR § 404.1527(d); *Allen v. Comm'r of Soc. Sec.*, 561

---

[3] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 CFR § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g., Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir.

12

F.3d 646 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The reasons must be supported by the evidence and must be sufficiently specific so as to make clear to any subsequent reviewers the weight the ALJ gave to the treating source medical opinion and the reasons for that weight. SSR 96-2p.

The Sixth Circuit has held that, "[p]rovided that they are based on sufficient medical data, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002), *quoting Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). If the ALJ rejects the opinion of a treating source, however, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 CFR § 404.1502.

The ALJ in the instant action discussed Plaintiff's history of mental health treatment as follows:

> [T]he claimant alleged he is disabled due to major depression, anxiety disorder, panic disorder, and insomnia (Exhibit 2E, Page 2). During the hearing, the claimant testified his single biggest problem is his mental health, and he cannot deal with people. The claimant testified he has difficulty concentrating, and he has bipolar, depression, and panic attacks.

---

2010); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-72 (6th Cir. 2006); *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2006).

> . . .
>
> The claimant's mental health records, his clinical presentations, and the effectiveness of his medications are inconsistent with disabling symptoms from his medical impairments. For instance, mental health records from Middle Tennessee Mental Health show the claimant was admitted due to depression and suicidal thoughts on January 2, 2013; however, the claimant improved with treatment/medication; and the claimant was less depressed upon discharge on January 7, 2013 (Exhibit 1F). Furthermore, medical records dated July 6, 2013, show the claimant denied depression and suicidal thoughts, and medical records dated July 6, 2013, show the claimant had normal affect and calm demeanor (Exhibit 2F, Pages 4 and 6). Medical records dated December 20, 2013, and August 14, 2014, show the claimant's mood and affect were within normal limits (Exhibit 6F). Additionally, progress notes dated April 3, 2014, indicate the claimant's Wellbutrin was working very well, and progress notes dated September 18, 2014, indicate the claimant had improved on Xanax and Wellbutrin (Exhibit 4F, Pages 15 and 19).[4] Notably, the consultative examination report dated September 1, 2016, shows the claimant was in the low average range of general intelligence; the claimant was polite and friendly; the claimant's attention and focus were good; the claimant correctly performed simple addition, subtraction, multiplication, and division problems; the claimant correctly performed serial seven subtractions; the claimant's mood was normal; the claimant's affect was appropriate yet sad; and the claimant did not have difficulty maintaining focus and concentration or staying on task during examination (Exhibit 11F). Finally, medical records dated February 12, 2016, show the claimant's mood and affect were normal (Exhibit 8F, Page 2).

TR 17-19, *citing* TR 187, 31-49, 256-59, 263, 265, 339-43, 307, 311, 561-77, 348 (footnote added).

The ALJ discussed the medical opinion evidence as follows:

---

[4] Although the ALJ cites "Exhibit 4F, Page . . . 19" to support the proposition that Plaintiff improved on Xanax and Wellbutrin (TR 19), the progress statement cited contains a prescription for Xanax and Wellbutrin but does not refer to their effectiveness (TR 311).

> The mental assessments of State agency psychological consultants Larry Welch, Ed.D., and Maurice Prout, Ph.D., are given significant weight because they are generally consistent with the record as a whole (Exhibits 2A and 5A). For instance, Dr. Welch and Dr. Prout opined the claimant can understand and remember simple and detailed but not complex or executive tasks and instructions, and the claimant can focus, attend to, and concentrate on the above tasks (Exhibits 2A and 5A). These opinions are generally consistent with the consultative examination report dated September 1, 2016, showing the claimant was in the low average range of general intelligence; the claimant's immediate, short-term, and long-term memory was average; the claimant's attention and focus were good; the claimant correctly performed simple addition, subtraction, multiplication, and division problems; and the claimant did not have difficulty maintaining focus and concentration or staying on task during mental status examination (Exhibit 11F). Furthermore, Dr. Welch and Dr. Prout opined the claimant can sustain no more than superficial or occasional interaction with the general public, which is generally consistent with the consultative examination's report dated September 1, 2016, showing that while the claimant's affect was sad, the claimant's mood was normal, and the claimant was polite and friendly during examination (Exhibit 11F).
>
> The assessment of treating psychiatrist Cupid Poe, M.D., is given little weight because it is inconsistent with the record as a whole (Exhbit 4F, Pages 4-8 and Exhibit 7F, Pages 1-3). For instance, Dr. Poe opined the claimant is unable to function in a normal work environment, which is inconsistent with the progress notes dated September 18, 2014, indicating the claimant had improved on Xanax and Wellbutrin, and the medical records dated February 12, 2016, showing the claimant's mood and affect were normal (Exhibit 4F, Page 15 and Exhibit 8F, Page 2). Furthermore, Dr. Poe opined the claimant had marked to extreme limitation interacting with others, which is inconsistent with the mental assessments of the State agency psychological consultants, which are given significant weight (Exhibits 2A and 5A).

TR 20, *citing* TR 57-67, 70-87, 561-77, 296-300, 344-46, 307, 348.

In the case at bar, Dr. Poe was Plaintiff's treating psychiatrist between July 2013 and November 2015 (TR 293-346), a fact that would justify the ALJ's according greater weight to his

opinion regarding Plaintiff's mental impairments than to other opinions, as long as his opinion was consistent with, and supported by, the evidence of record. 20 C.F.R. § 416.927(d).

Plaintiff is correct that the ALJ did not specifically discuss the treatment documented in Dr. Poe's progress notes, which describe Plaintiff's reported symptoms, including, *inter alia,* anxiety, panic attacks, depressed mood, difficulty sleeping, and anger, worry or feeling easily upset, and also include diagnoses of GAD, panic disorder, bipolar disorder, ADHD, and PTSD. TR 323-38. The ALJ's discussion of Plaintiff's treatment from Dr. Poe is limited to a singular statement that a September 18, 2014 progress note indicates that Plaintiff had improved on Xanax [*sic*][5] and Wellbutrin. TR 20, *citing* 307. The ALJ's opinion fails to specifically discuss significant portions of Plaintiff's treatment records from Dr. Poe. Accordingly, the undersigned cannot determine whether the ALJ was aware of or considered the information contained in these treatment records.

As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the opinions are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the

---

[5] The ALJ opinion states that "Exhibit 4F, Page 15" indicates that Plaintiff's Xanax and Wellbutrin were working well. TR 20, *citing* TR 307. This progress note actually states that Plaintiff's *wife* reported that he had improved since being on *Neurontin* and Wellbutrin. TR 307. The progress note also indicates simply that Plaintiff was being *prescribed, inter alia,* Xanax, Neurontin, and Wellbutrin. *Id.*

16

Case 1:18-cv-00001   Document 18   Filed 07/20/18   Page 16 of 20 PageID #: 667

Commissioner. 20 CFR § 416.927(e)(2).

To support his assertion that Dr. Poe's opinion is not supported by the record, the ALJ cites (not entirely accurately) a single notation from Dr. Poe that Plaintiff improved with medication. As discussed above, the ALJ failed to adequately discuss Plaintiff's history of psychiatric treatment, including treatment from Dr. Poe between 2013 and 2015. *See supra* p. 16. Therefore, the undersigned cannot conclude that the ALJ's decision not to give controlling weight to Dr. Poe's opinion was supported by substantial evidence in the record. *See* 20 CFR § 416.927(d)(2); 20 CFR § 404.1527(d)(2).

The Regulations do not allow an ALJ to give a treating physician's medical opinion less than controlling weight simply because another physician reached a contrary conclusion. *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009). When comparing the opinions of multiple physicians, the ALJ must generally give the opinion of a treating physician greater weight than the reports of consulting physicians. *See, e.g., Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980); *Hurst v. Schweiker*, 725 F.2d 53, 55 (6th Cir. 1984); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). In cases involving mental impairments, the opinion of a physician who does not specialize in psychiatry is not entitled to substantial weight where the physician has no special training or experience in psychiatry. *Sherrill v. Sec'y of Health & Human Servs.*, 757 F.2d 803, 805 (6th Cir. 1985).

The ALJ states that Dr. Poe's opinion should be given little weight because it is inconsistent with "medical records dated February 12, 2016, showing the claimant's mood and affect were normal." TR 20, *citing* TR 348. The medical record cited by the ALJ is from Marek Durakiewicz, M.D., an emergency room physician who treated Plaintiff for abdominal pain. TR

347-53. Although the ALJ is correct that Dr. Durakiewicz noted that Plaintiff's affect and mood were normal, Dr. Durakiewicz treated Plaintiff for abdominal pain and the treatment record does not indicate that he has any special training or experience in psychiatry. *Id.* Therefore, his opinion about Plaintiff's mental health is not entitled to substantial weight, and inconsistency between Dr. Durakiewicz's treatment record and Dr. Poe's opinion is insufficient to accord Dr. Poe's opinion less weight. *See* 20 CFR § 416.927(c)(5); *see also Sherrill v. Sec'y of Health & Human Servs.*, 757 F.2d at 805; *Hensley v. Astrue*, 573 F.3d at 267.

The ALJ also gives little weight to Dr. Poe's opinion because it is "inconsistent with the mental assessments of the state agency psychological consultants, which are given significant weight." TR 20. The ALJ states that he gave significant weight to the non-examining state agency consultants because "they are generally consistent with the record as a whole." *Id.* Plaintiff correctly notes that the only justification the ALJ provided for giving significant weight to the non-examining consultants was that their opinions were consistent with the September 1, 2016 consultative examination report performed by Larry Palmer, M.D. Docket No. 15 at 11, TR 20. When comparing the opinions of multiple physicians, the ALJ must generally give the opinion of a treating physician greater weight than the reports of consulting physicians. *See, e.g., Allen v. Califano*, 613 F.2d at 145; *Hurst v. Schweiker*, 725 F.2d at 55; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d at 90. In this case, the ALJ erred by discounting the opinion of Plaintiff's treating physician because it was inconsistent with the assessment of State agency consultants without properly discussing Plaintiff's mental health treatment and supporting the decision with substantial evidence.

As stated above, an ALJ generally accords greater weight to the opinions of treating

18

physicians when those opinions are consistent with, and supported by, the evidence of record. 20 C.F.R. § 416.927(d). If the ALJ rejects the opinion of a treating physician, he must articulate some basis for doing so. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). While the ALJ in the present case stated that Dr. Poe's findings were inconsistent with the record as a whole, as has been demonstrated, the ALJ did not substantiate this finding with a thorough discussion of Plaintiff's mental health treatment records or citing specific evidence from the record, and it is unclear whether the ALJ properly analyzed the available evidence in light of Dr. Poe's treating physician status. *Id*.

The Sixth Circuit has held that remand is required despite the existence of substantial evidence to support the ALJ's decision where the ALJ might have reached a different decision had he not misconstrued certain evidence and overlooked other evidence. *Uforma/Shelby Business Forms v. N.L.R.B.*, 111 F.3d 1284, 1292-1293 (6th Cir. 1997). Because the undersigned cannot determine with certainty that the ALJ properly considered Plaintiff's psychiatric treatment records or that he accurately considered the evidence of record in his decision to discount Dr. Poe's opinion, the undersigned recommends that this action be REMANDED.[6]

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be GRANTED and that the decision of the Commissioner be REMANDED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14)

---

[6] Because the undersigned recommends that this action be remanded, the undersigned will not analyze Plaintiff's remaining statements of error.

19

days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

                                                            _____
                                                            JEFFERY S. FRENSLEY
                                                            United States Magistrate Judge